No. 14-40313

In the United States Court of Appeal
For the Fifth Circuit

U.S. COURT OF APPEALS
RECEIVED
MAR 2 1 2014
FIFTH CIRCUIT

**IN RE:  SIGNAL INTERNATIONAL, LLC,
SIGNAL INTERNATIONAL, INC.
SIGNAL INTERNATIONAL TEXAS, G.P., AND
SIGNAL INTERNATIONAL TEXAS, L.P.,**
                                                            *Relators*

On Petition for Writ of Mandamus to the United States District Court
for the Eastern District of Texas
*Reji Samuel, et al v. Signal International, LLC, et al*, C.A. No. 1:13-cv-00323,
Hon. Marcia Crone, District Judge

## PETITION FOR WRIT OF MANDAMUS

### HANGARTNER RYDBERG & TERRELL LLC

Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
One Shell Square, 701 Poydras Street, Suite 310
New Orleans, LA   70139
Telephone (504) 522-5690, Facsimile: (504) 522-5689

Counsel for Relators, Signal International, LLC, Signal International, Inc.,
Signal International Texas, G.P., and Signal International Texas, L.P.

No. _____

# In the United States Court of Appeal
# For the Fifth Circuit

## IN RE:  SIGNAL INTERNATIONAL, LLC,
## SIGNAL INTERNATIONAL, INC.
## SIGNAL INTERNATIONAL TEXAS, G.P., AND
## SIGNAL INTERNATIONAL TEXAS, L.P.,
*Relators*

On Petition for Writ of Mandamus to the United States District Court
for the Eastern District of Texas
*Reji Samuel, et al v. Signal International, LLC, et al*, C.A. No. 1:13-cv-00323,
Hon. Marcia Crone, District Judge

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representatives are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## DEFENDANTS-RELATORS:

Signal International, LLC
Signal International, Inc.,
Signal International Texas, L.P.
Signal International Texas, G.P.

**ATTORNEYS FOR DEFENDANTS-RELATORS**:

Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
HANGARTNER RYDBERG & TERRELL LLC
One Shell Square, 701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone (504) 522-5690
Facsimile: (504) 522-5689

**PLAINTIFFS-REAL PARTIES IN INTEREST:**

Raji Samuel
Atha Mohammad Abdul
Kesavarao Bundankayala
Raju Divakaran
Biju Perumpilly George
Krishna Gonthina
Nayappulli Jayachandran
Galla Venkata Rama Krishna
Samuel Jose Kumrumthodathil
Lohithakshan Madampet
Johny Mandy Mathai
Belthazar Peter
Mohanan Balakrishna Pillai
Santhosh Kumar Rajendran Pillai
Aby Karickathara Raju
Sumesh Porambathuparam Subranmanian
Chandran Shaju Thanissery

## ATTORNEYS FOR PLAINTIFFS-REAL PARTIES IN INTEREST:

William H. Boice
Brian G. Corgan
Heather L. Heindel
Susan W. Pangborn
Kilpatrick Townsend & Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4530
Telephone:  (404) 815-6464
Facsimile:  (404) 541-3134

## OTHER PARTIES IN UNDERLYING LITIGATION:

Defendants:
Malvern C. Burnett
Gulf Coast Immigration Law Center, LLC
Law Offices of Malvern C. Burnett
Global Resources, Inc.
Michael Pol
Sachin Dewan
Dewan Consultants Pvt. Ltd. a/k/a Medtech Consultants

## ATTORNEYS FOR DEFENDANTS, MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, LLC AND LAW OFFICES OF MALVERN C. BURNETT:

Timothy W Cerniglia
Timothy W. Cerniglia, PLC
1521 St Charles Ave
New Orleans, LA 70130
Telephone:  (504) 586-0555
Facsimile:  (504) 586-0550

## ATTORNEYS FOR DEFENDANTS, GLOBAL RESOURCES, INC. AND MICHAEL POL:

Not represented.

**ATTORNEYS FOR DEFENDANTS, SACHIN DEWAN AND DEWAN CONSULTANTS PVT. LTD. A/K/A MEDTECH CONSULTANTS**:

Stephen H. Shapiro
Stephen H. Shapiro, Attorney at Law
700 Camp Street
New Orleans, LA   70130
Telephone:  (504) 309-8442
Facsimile:   (504) 934-2000

**RESPONDENT:**

Hon. Marcia A. Crone
United States District Court
Eastern District of Texas
300 Willow Street, Suite 239
Beaumont, Texas   77701
Telephone:  (409) 654-2880

Alan Dean Weinberger
Attorney for Record for Petitioners
Signal International, LLC,
Signal International, Inc.
Signal International Texas, G.P. and
Signal International Texas, L.P.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary.

## STATEMENT REGARDING FIFTH CIRUIT I.O.P. 21

Given this petition's subject-matter, petitioner must apply for emergency relief to preserve and vindicate the first-filed rule's core policies and lessen prejudice to petitioner. Petitioner accordingly so moves.

The lower Court set the present action for trial, possibly, in December of 2014 and issued a scheduling order containing a discovery deadline, among other deadlines, that the lower court did not order the parties to harmonize with discovery occurring in the first court, a court now managing both the litigation initiated in it, the Eastern District of Louisiana, as well as suits transferred to it on the basis of the first-filed rule by the Southern District of Mississippi. Recognizing what the principles underlying the first-filed rule are, the first court has set transferred cases for trial and ordered discovery harmonized and made efficient, stressing its desire to avoid duplication. The Decision of the lower court trenches on the policies underlying the first-filed rule with regard to duplication and comity. *Cf. Smith v. Bayer Corp.*, *infra*, 131 S. Ct. at 2382 ("Finally, we would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute.").

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

STATEMENT REGARDING FIFTH CIRUIT I.O.P. 21.......................................... v

TABLE OF CONTENTS ......................................................................................... vi

TABLE OF AUTHORITIES.................................................................................. viii

APPENDIX A TO PETITION FOR WRIT OF MANDAMUS............................. xii

1.   RELIEF SOUGHT: ......................................................................................... 1

2.   ISSUES PRESENTED:.................................................................................... 1

3.   FACTS NECESSARY TO UNDERSTAND ISSUES PRESENTED ........... 2

     i.   Procedural and Factual Background of Decision Below........................... 2

     ii.  Splitting the Cause of Action..................................................................... 9

4.   REASONS WHY WRIT SHOULD ISSUE .................................................. 11

     a.  Mandamus Lies....................................................................................... 11

     b.  The Standard of Review.......................................................................... 14

     c.  Judge Posner Agrees with Petitioner ..................................................... 15

     d.  Smith Does Not Contain Ordinary Dicta................................................ 16

e. The Court Below Decided that Smith is Foolish ...................................... 17

f. Smith Clearly Implicates the First-Filed Rule ......................................... 17

g. Smentek Validates This Petition .............................................................. 20

h. The Lower Court Clearly Violated International Fidelity ....................... 22

i. The Lower Court Clearly Violated Save Power ...................................... 25

j. West Gulf Was Clearly Misinterpreted ................................................... 27

5. CONCLUSION ............................................................................................. 28

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Cohens v. Virginia*,
6 Wheat. 264, 19 U.S. 264, 399-400, 5 L. Ed. 257 (1821) .................................. 17

*Achari v. Signal Int'l, LLC*,
2013 U.S. Dist. LEXIS 150233 (S.D.Miss. Oct. 18, 2013)
(Guirola, Jr., J.)............................................................................................. 1, 6, 13

*Alldread v. Green,*
988 F.2d 1425, 1434 (5th Cir. 1993)...................................................................... 8

*Central Va. Cmty. College v. Katz*,
546 U.S. 356, 363, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006)....................... 16, 17

*Cortez Byrd Chips, Inc.* v. *Bill Harbert Constr. Co.*,
529 U.S. 193, 198, 120 S. Ct. 1331, 146 L. Ed. 2d 171 (2000 ...................... 16, 18

*David v. Signal Int'l, LLC*,
Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247,
at *129 (E.D. La. Jan. 3, 2012) ................................................................... passim

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
681 F.2d 328, 336 (5th Cir. 1981)....................................................................... 15

*Fair Assessment in Real Estate Association, Inc. v. McNary*,
454 U.S. 100, 103-05, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981)......................... 16

*Great Lakes Dredge & Dock Co. v. Huffman*,
319 U.S. 293, 63 S. Ct. 1070, 87 L. Ed. 1407 (1943).......................................... 16

**H.J. Inc. v. Northwestern Bell Telephone Co.**,
  *492 U.S. 229, 255, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)*............................ 25

**Homoki v. Conversion Services, Inc.**,
  488 Fed. Appx. 848, 850 (5th Cir. 2012)........................................................ 24, 28

**Hoover v. Wagner**,
  47 F.3d 845, 851 (7th Cir. 1995)........................................................................... 16

**In re: Best Buy Co., etc.**,
  804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)........................................................ 13

**In re: Deepwater Horizon**,
  739 F.3d 790, 2014 U.S. App. LEXIS 575, *13 (5th Cir. 2014) ......................... 15

**In re: Echostar Corp.**,
  388 Fed. Appx. 994, 995 (Fed. Cir. 2010)............................................................ 12

**In re: Radmax Ltd.**,
  720 F.3d 285, 287 (5th Cir. 2013)............................................................. 11, 12, 28

**In re: Volkswagen of America, Inc.**,
  545 F.3d 304, 309 (5th Cir. 2008) (*en banc*) .................................................passim

**Int'l Fidelity Ins. Co. v. Sweet Little Mex. Corp.**,
  665 F.3d 671, 678 (5th Cir. 2011).................................................................passim

**Johnson v. Rodriguez**,
  110 F.3d 299, 314 (5th Cir. 1997)........................................................................ 15

**Jones v. Xerox Commercial Solutions, LLC**,
  2013 WL 3245957, *4, 2013 U.S. Dist. LEXIS 89347,
  *10 (S.D.Tex. June 26, 2013) ............................................................................... 4

**Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.**,
  342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200 (1952).................................... 9

*Landis* v. *North American Co.*,
  299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ............................ 2, 16, 18

*Ross v. U.S. Bank Nat. Ass'n*,
  542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) ......................................................... 9

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947, 950 (5th Cir. 1997) ................................................................. passim

*Setton Towing, LLC v. St. Paul Surplus Lines Ins. Co.*,
  703 F.3d 268, 281 n. 1 (5th Cir. 2013) ................................................................ 21

*Smentek v. Dart*,
  683 F.3d 373 (7th Cir. 2012) (Posner, J.) ...................................................... passim

*Smith v. Bayer Corp.*,
  --U.S.--, 131 S. Ct. 2368, 2381, 180 L. Ed. 341 (2011) ................................. passim

*Sutter Corp. v. P & P Industries, Inc.*,
  125 F.3d 914, 920 (5th Cir. 1997) ................................................................. 10, 14

*The Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599, 603 (5th Cir. 1999) ................................................................. passim

*Wal-Mart Stores, Inc. v. Dukes*,
  -- U.S. --, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011) .......................... 22, 23

*West Gulf Maritime Assn. v. ILA Deep Sea Local 24,
  South Atlantic and Gulf Coast District of the ILA: AFL-CIO,*
  751 F.2d 721, 729 (5th Cir. 1985) ................................................................. passim

## Statutes

§ 1404(a) ........................................................................................................... 11, 12

§ 1407 ................................................................................................................... 13

Fair Labor Standards Act......................................................................................... 4, 9

Fed.R.App. Proc. 8 ..................................................................................................... 7

## Other Authorities

18 Moore's Federal Practice, § 134.02[1][a] (Lexis 2013)....................................... 19

5A C. Wright & A. Miller, Federal Practice and Procedure § 1360 (1990) ........... 19

## Rules

Fed.R.Civ.P. 72(a) .................................................................................................... 3

Rule 10(a) of the Rules of the Supreme Court ......................................................... 12

Rule 23(b)(3) ........................................................................................... 1, 6, 22, 24

Rule 23(f)............................................................................................................ 6, 20

Rule 72(a) ............................................................................................................ 7, 8

1.    **RELIEF SOUGHT**:

Signal, petitioner, petitions for a writ of mandamus directing the United States District Court for the Eastern District of Texas, Beaumont Division, to transfer, pursuant to the first-filed rule, to the United States District Court for the Eastern District of Louisiana, the above captioned action.

2.    **ISSUES PRESENTED**:

Based on the lower Court's decision, which was dated February 12, 2013 with regard to the District Judge, the question presented is whether the contours of the first-filed rule are such that the first-filed rule is coextensive with Rule 23(b)(3) because the first-filed rule applies only when a trial of the issues in the first action simultaneously resolves the issues in the second action. *Cf. Cadle, infra*, at 603 (question concerning contours of first-filed rule is legal question reviewed *de novo*). The lower court reasoned as if the first-filed rule is coextensive with Rule 23(b)(3), whereas when the Southern District of Mississippi faced the same question in similar litigation initiated in the Southern District of Mississippi by members of the same absent class the court below also faced, the Southern District concluded that "failing to meet the commonality requirements for class certification is not equivalent to a lack of substantial overlap of issues." *Achari, infra*, at *16.

This petition thus presents a split, in ongoing litigation, between Districts in the Fifth Circuit, as to the law relating to the contours of the first-filed rule.

Intertwined with that question is the question of whether *Smith v. Bayer Corp.* clarifies, in a mandatory sense, the contours of the first-filed rule relative to actions filed by absent class members, new actions raising disputes resolved by the first court's, class certification decision. *See Smith*, *infra*, at 2382, *citing*, *e.g.*, *Landis*, *infra*.[1] Intertwined with that question is the question of whether *Smith's* remedial section is comprised of ordinary *dicta*. Although the action below did not pray for class certification, the action raised disputes the first court resolved, such as one regarding whether a forced labor claim can be tried on the basis of circumstantial evidence alone. The first court said no. *See David*, *infra*, at *76-*78. The action below is thus a classic example of a paradigm discussed in *Smith v. Bayer Corp.*, -- U.S.--, 131 S. Ct. 2368, 2381, 180 L. Ed. 341 (2011) ("[nonpreclusion] perforce leads to relitigation of many issues, as plaintiff after plaintiff after plaintiff (none precluded by the last judgment because none a party to the last suit) tries his hand at establishing some legal principle or obtaining some grant of relief.").

## 3.    FACTS NECESSARY TO UNDERSTAND ISSUES PRESENTED

### i.    *Procedural and Factual Background of Decision Below*

The substantive Decision below was penned by the Magistrate and affirmed or not reversed by the District Court when Signal moved the District Court to

---

[1] *See*, *e.g.*, *Landis*, *infra*, 299 U.S. at 249 (Cardozo, J.) ("The controversy hinges upon the power of a court to stay proceedings in one suit until the decision of another, and upon the propriety of using such a power in a given situation.").

reconsider the Magistrate's Decision pursuant to Fed.R.Civ.P. 72(a). Signal has no

material quarrel with this description, by the Magistrate, of this matter's posture:

### A. Procedural Background

On March 7, 2008, twelve individuals who allegedly were trafficked into the United States filed a putative class action in the Eastern District of Louisiana. *See David v. Signal Int'l, LLC*, Civ. A. No. 08-1220 (E.D. La.). The Court denied class certification for the Plaintiffs' trafficking, RICO, civil rights and state law contract and fraud claims. (Footnote omitted). *David v. Signal Int'l, LLC*, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012). As a result of this ruling, the Plaintiffs in the instant action filed suit in this District, where they were allegedly enslaved. (Doc. No. 21 at 9.) . . . The Plaintiffs allege that some or all of the Defendants violated the following federal statutes: 1) The Trafficking Victims Protection Reauthorization Act of 2003; 2) Racketeer Influenced and Corrupt Organizations Act; 3) The Civil Rights act of 1866; and 4) The Ku Klux Klan Act of 1871. (Id.) In addition, the Plaintiffs bring state law fraud, negligent misrepresentation and breach of contract claims against all of the Defendants. (Id. at 46-48.) On July 29, 2013, the Signal Defendants filed the pending Motion to Transfer Action Pursuant to First Filed Rule. (Doc. No. 12.).[2]

### B. Factual Background

In the aftermath of Hurricane Katrina, approximately 590 men, including the Plaintiffs, were allegedly trafficked into the United States through the federal government's H-2B guest worker program to provide services to the Signal Defendants. (Doc. No. 1 at 2.) The Plaintiffs claim that they were lured to work for Signal through the fraudulent promise of legal and permanent work-based immigration to the United States for themselves and their families. (Id.) Subsequently, after coming to the United States, the Plaintiffs were allegedly subjected to forced labor and other serious abuses at Signal operations in Orange, Texas. (Id. at 4.) Each Plaintiff has a different story as to

---

[2] In the decision below, footnote 1 reads: "The District Court has not ruled on the collective action FLSA claims in the *David* case, which include opt-ins by the Plaintiffs in this case. (Doc. No. 21 at 4.)."

their recruitment, travel and abuse while working for Signal. (Doc. No. 21 at 8.)

*See* Appendix ("Appx."), Doc. #2, at pp. 1-3.

After establishing this background, the lower Court turned to the merits of the first-filed question. It cited several Fifth Circuit decisions concerning the first-filed rule including *West Gulf*, *infra*; *Save Power*, *infra*, *Int'l Fid*., *infra*, and *Cadle*, *infra*. *See id*., at pp. 3-4. On page 5, in footnote 2, the lower Court also cited *Smith v. Bayer Corp*., noting, parenthetically, that *Smith's* holding concerned the reasons why a class certification decision does not preclude absent class members. *See id*., at p. 5 n. 2. The lower Court omitted any mention of *Smith's* remedial section. The lower Court neither acknowledged nor discussed *Smith's* expectation relative to comity, though the lower Court addressed the first-filed rule.

Citing a District Court decision from the Southern District of Texas that concerned only claims under the Fair Labor Standards Act, namely, *Jones v. Xerox Commercial Solutions, LLC*, 2013 WL 3245957, *4, 2013 U.S. Dist. LEXIS 89347, *10 (S.D.Tex. June 26, 2013), the lower Court also remarked, "'the fact that the parties are different cuts against an argument for substantial overlap." *See id*., at p. 5. As far as Signal can determine, this principle is one this Court has never endorsed.

The lower Court also conceded that the two actions shared common subject matter, observing, "[t]he instant suit and *David* are related to the extent that all of

4

the claims asserted in this suit are also asserted by the different David plaintiffs."
*See* Appx., at Doc. #2, p. 5.

Also, the lower Court effectively conceded that the plaintiffs split their cause
of action by remaining opt-in plaintiffs in the first court for the purposes of a FLSA
collective action. *Id.* ("[With regard to FLSA claims] all of the Plaintiffs in the
instant suit are also plaintiffs in *David* . . ."). Signal urged that this was an equitable
basis for transfer.

The nucleus, however, of the lower Court's Decision reasoned that "there
[was] not substantial overlap among the claims in both suits [because] the District
Court established in its opinion denying the Plaintiffs' Motion for Class Certification
in *David* [that] each of the Plaintiffs' claims require individualized proof as it
pertains to that particular Plaintiff. . . . Therefore, the issues presented by the
Plaintiffs cannot be resolved in the *David* suit." *See* Appx., Doc. #2, pp. 5-6, citing
*West Gulf, infra.*

The lower Court accordingly concluded its Decision in this manner:

> Given that there is not a substantial overlap of the claims
> between the *David* litigation and this case, and with the
> exception of the Plaintiffs' FLSA claims in *David*, none of
> the Plaintiffs in the instant suit and *David* overlap, the
> court's denial of the Signal Defendants' motion to transfer
> will not result in 'piecemeal resolution of issues that call
> for a uniform result.' Save Power Ltd. v. Syntek Fin.
> Corp., 121 F.3d 947, 950 (5th Cir. 1997).

*V.     Conclusion*
The undersigned finds that the instant suit does not substantially overlap with the first-filed suit, *David*.

Appx., Doc. #2, p. 8.

Additional facts further illuminating the present matter's procedural background include the fact, as the lower Court opinion acknowledged by silence, that the class representatives in *David* never petitioned this Court for Rule 23(f) review.

It is also enormously important to recognize that members of the absent class in *David* filed suit in the Southern District of Mississippi, where Signal likewise had a shipyard, in addition to the Eastern District of Texas. And again, the Southern District reached the question of transfer before the Eastern District of Texas did. The Southern District of Mississippi consolidated four actions filed by absent class members on Signal's motion and then transferred the consolidated actions to New Orleans on the basis of the first-filed rule. ***See Achari v. Signal Int'l, LLC***, 2013 U.S. Dist. LEXIS 150233 (S.D.Miss. Oct. 18, 2013) (Guirola, Jr., J.). The Southern District of Mississippi did not conflate the first-filed rule and Rule 23(b)(3), as the lower Court did. Instead, ***Achari*** reasoned that "failing to meet the commonality requirements for class certification is not equivalent to a lack of substantial overlap of issues." ***See Achari***, ***supra***, at *16).

It is apparent, as stated before, that the absent class members filed their new lawsuits in new Districts in the hope of "obtaining some grant of relief." *See Smith*, *supra*, 131 S. Ct. at 2381 ("[nonpreclusion] perforce leads to relitigation of many issues, as plaintiff after plaintiff after plaintiff (none precluded by the last judgment because none a party to the last suit) tries his hand at establishing some legal principle or obtaining some grant of relief.").

Signal responded to each new suit with a motion based on the first-filed rule.

Nor should there be any misunderstanding concerning Signal's picture of the subject of this petition. The subject of this petition is the opinion of the District Court refusing to reverse or vacate the substantive Decision of the Magistrate, the one which denied Signal's motion for transfer on February 12, 2013. *See* Appx., Doc. #1. (By analogy to Fed.R.App. Proc. 8, Signal then moved the District Court for a stay of the proceeding below, which the Magistrate refused on March 13, 2013).

When Signal appealed the Decision of the Magistrate to the District Judge pursuant to Rule 72(a), in her two page opinion, the District Court focused on the standard of review, determining that none of the Magistrate's conclusions were clearly erroneous or contrary to law. *See* Appx., at Doc. #1, p. 2. The District Court did not undertake an independent analysis, in writing, of the first-filed question.

7

The question presented by this Petition "is whether the district court applied [under these circumstances] the proper legal analysis."[3] Signal argues that the District Court clearly and indisputably did not, and that relief by mandamus is warranted accordingly. *Cf. Volkswagen*, *supra*.

A proper legal analysis by the District Court would have captured the Magistrate's errors with regard to the contours of the first-filed rule and with regard to other legal errors, such as misinterpreting *Smith*. *Cf. Alldread*, *supra*.

Signal, however, must examine the Decision of the Magistrate in the presence of this Court to unravel the reasons why the Decision of the District Court was as contrary to law as the underlying Decision of the Magistrate.

It is noteworthy that the lower Court accepted a view of the first-filed rule advanced by plaintiffs. In their brief opposing transfer, the plaintiffs wrote, on the basis of a case decided by a Ninth Circuit Court: "When examining whether the parties are substantially similar, the key issue is whether the parties in the two cases are similar enough that a judgment in the first case will resolve plaintiff's issues in the current case. *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D.

---

[3] *Alldread v. Green*, 988 F.2d 1425, 1434 (5th Cir. 1993) ("Appellants argue on appeal that the district court failed to review the magistrate judge's ruling for 'errors of law, as is required by Rule 72(a) of the Federal Rules of Civil Procedure, under which the court must set aside or modify orders 'found to be clearly erroneous or contrary to law.' Though this court reviews a district court's factual findings under a clearly erroneous standard, legal conclusions are reviewed *de novo*. The first question presented, therefore, is whether the district court applied the proper legal analysis.") (internal citations omitted).

Cal. 2008)." *See* Plaintiffs' Opposition to Motion to Transfer (Appendix, Doc. #4, at p. 6.

On page 8 of their opposition, the plaintiffs attributed the same rule to *West Gulf*, writing: "Application of the first-to-file rule is appropriate only when the issues in the second-filed case could be resolved through resolution of the issues in the first-filed case. *West Gulf Maritime Assn. v. ILA Deep Sea Local 24, South Atlantic and Gulf Coast District of the ILA: AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985)." *See id.*, at p. 8.

Signal will discuss *West Gulf* in more detail shortly.

### ii.    *Splitting the Cause of Action*

Stressing the first-filed inquiry's equitable character on the basis of *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200 (1952),[4] Signal's motion to transfer pointed out that the absentees had split their cause of action by remaining, in *David*, opt-in plaintiffs to pursue a collective action under the Fair Labor Standards Act. The lower Court acknowledged this fact. However, the lower Court focused on the fact that there were no FLSA claims in the lower Court. It stated that the action in the lower court and the first

---

[4] "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here *are equitable in nature*." (Emphasis added).

action therefore did not overlap with regard to FLSA claims. Appx., Doc. #2, at p. 5. The lower Court then added that if the first Court would reverse the flow of the first-filed rule and transfer the FLSA claims in the first action to the second action, "there would be no common plaintiffs in either case." *Id*. In a footnote, the lower Court alluded to the fact that that the absentees "may have already requested this relief with the *David* court." *See id*., at p. 5 n. 3.

The lower court did not refer to authority for the first court to transfer claims to the second court. Many cases decided by this Court referring to the second court's obligation to transfer substantially overlapping claims to the first court furnish reason for concluding that the lower Court speculated about the desirability of an unlawful measure. *Cf. Sutter Corp. v. P & P Industries, Inc.*, 125 F.3d 914, 920 (5th Cir. 1997).[5]

Just so, when the named plaintiffs in the first action filed in the first court a "Motion to Protect Opt-In Plaintiffs' FLSA Claims," urging the first court to, *inter alia*, transfer the opt-ins to "the new actions," the first Court denied the motion, stating: "This Court acknowledges its power to manage its docket and consider

---

[5] ". . . 'the Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.' Therefore, the 'first to file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." (Footnotes and internal citations omitted and brackets in original).

fairness to the parties. (Citation omitted). This power alone, however, is not sufficient to justify accommodating plaintiffs' vague and unsupported requests." *See David v. Signal Int'l*, No. 08-1220, Doc. #1423, pp. 3-5 (E.D.La. Oct. 22, 2013).

## 4.    **REASONS WHY WRIT SHOULD ISSUE**

### a.    *Mandamus Lies*

The first question is whether mandamus is a potential remedy. Signal contends that *In re: Volkswagen of America, Inc.* and *In re: Radmax Ltd.*, are broad enough to encompass other transfer rules beside § 1404(a) and that mandamus is therefore, for Signal, a potential remedy.

In fact, in a moment, Signal will discuss a decision from the Federal Circuit that decides that Signal's position is correct, but Signal also wants to stress a point that is, to Signal, self-evident, a point *Radmax* touches on, namely, the "no other adequate means" test. It is in the nature of argument over the application of the first-filed rule, considering the policies underlying the first-filed rule, just as much as § 1404(a), that if the rule is not applied, the "'harm . . . will already have been done by the time the case is tried and appealed.'" *See Radmax*, *infra*, at 287 n. 2, *citing Volkswagen*, *infra*, at 318-19. Therefore, this petition satisfies the test for potential relief by mandamus. *Id*.

*Volkswagen of America, Inc.* "expressly 'recognized the availability of mandamus as a limited means to test the district court's discretion in issuing *transfer*

11

orders.'" *In re: Volkswagen of America, Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (*en banc*) (citation and footnote omitted and emphasis added). *See also In re: Radmax Ltd.*, 720 F.3d 285, 287 (5th Cir. 2013) (same). But these cases only concerned § 1404(a). However, *In re: Echostar Corp.*, 388 Fed. Appx. 994, 995 (Fed. Cir. 2010) concerned both the first-filed rule and § 1404(a).

*In re: Echostar Corp.* considered the petition of a party who had urged transfer under § 1404(a) *and* the first-filed rule. *Id.* Denied relief, *Echostar* petitioned for mandamus. This occasioned review, interestingly enough, of this Court's precedent. *Echostar* observed that mandamus may lie "to correct a patently erroneous denial *of transfer*" under either source. *Id.* (emphasis added). While *Echostar* proceeded to disagree with the petitioner substantively, the Federal Circuit did not doubt that the petition was procedurally proper relative to mandamus *under either source. Id.*

*Volkswagen* also remarks that "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *See id.*, at 319 (citation omitted). This petition, in addition to "establish[ing] a clear and indisputable right to the writ," also has an importance beyond the immediate case." *See In re: Volkswagen*, *supra*, at 308, 319.

This petition, for example, by analogy to Rule 10(a) of the Rules of the Supreme Court of the United States and the jurisprudence and commentary related

to it, presents a split between District Courts in this Circuit on the same question or questions of law. Such a conflict cries out for supervision.

An additional factor transcending the immediate case concerns the Judicial Panel on Multidistrict Litigation. While the Southern District of Mississippi upheld Signal's transfer argument, *see Achari*, *supra*, in Texas, multiple cases instituted by *David's* absent class members setting forth the same claims as the first action were not transferred to the first court on the basis of the first-filed rule in response to Signal's motions and are pending below. The Decision below is simply the lowest numbered one. (The lower Court overruled Signal's motion, on first-filed grounds, to consolidate related cases within the Court).

It is the avowed position of the Panel that it will not consider a petition for § 1407 consolidation unless all other options have been exhausted. *See In re: Best Buy Co.*, *etc.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (directing defendants in Signal's position to exercise the ". . . options available to avoid duplication of efforts," like motions "to dismiss or stay duplicative actions *under the first-to-file doctrine* . . .," prior to considering grand relief afforded by § 1407) (emphasis added).

This petition will erase any ambiguity over the extent of exhaustion. This petition therefore satisfies the requirement of significance beyond the immediate case.

As this Court has stressed repeatedly, in the final analysis, it is up to the first court to definitively decide whether the actions substantially overlap. *See Sutter Corp. v. P & P Industries, Inc.*, *supra*, 125 F.3d at 920. This matter should therefore be decided on the basis that Signal must show a clear violation of the law relating to the question of whether the likelihood of substantial overlap has been demonstrated. For all of these reasons, however, as a procedural matter, mandamus may lie. The balance of this application explains why substantive relief is warranted.

### b. *The Standard of Review*

The standard of review is *de novo*. This is true because the errors below were legal errors concerning the contours of the first-filed rule and other legal errors, such as errors in construing legal opinions.

When the questions this often and this deeply concern "the contours of the rule itself," "[t]his is a purely legal matter [the Fifth Circuit] review[s] *de novo*. *The Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). *See also Sutter Corp. v. P & P Industries, Inc.*, *supra*, 125 F.3d at 917 ("A district court's decision whether to grant a stay [pursuant to the first-filed rule] is ordinarily reviewed for abuse of discretion. *However, to the extent the district court's decision*

14

*in this case rests on an interpretation of the law, the decision is reviewed de novo*.").[6]

### c. *Judge Posner Agrees with Petitioner*

Shortly, Signal will discuss the manner in which the Decision below grossly contravenes *Int'l Fidelity Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011), *West Gulf*, *supra*; *Save Power*, *supra*, and other legal decisions and is therefore clearly and indisputably reversible. Initially, however, because *Smith* is a Supreme Court opinion, and because *Smith* is so indicative of Signal's right to relief, Signal urges this Court to focus initially on *Smith*. A controlling Supreme Court opinion deserves to be the initial focus of discussion. It is also sensible, however, to consider an opinion of the Seventh Circuit at the same time, namely, *Smentek v. Dart*, 683 F.3d 373 (7th Cir. 2012) (Posner, J.). *Smentek* is both unique with regard to its subject-matter, i.e., *Smith's* discussion of the comity principle; and probative of this petition.

As far as Signal can tell, only *Smentek* has wrestled to date with *Smith's* discussion of how the principle of comity should affect a District Court's consideration of disputes held in common with a prior, class certification decision.

---

[6] *See also In re: Deepwater Horizon*, 739 F.3d 790, 2014 U.S. App. LEXIS 575, *13 (5th Cir. 2014) ("This court exercises *de novo* review as to whether the district court applied the correct legal standard."); *Johnson v. Rodriguez*, 110 F.3d 299, 314 (5th Cir. 1997) (application of improper legal standard requires reviewing court to reverse decision); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 681 F.2d 328, 336 (5th Cir. 1981) ("'The application of an improper legal standard is never within the district court's discretion.'") (citation omitted).

In *Smentek*, Judge Posner characterized *Smith's* reference to comity as "cryptic." *See id.*, at 375. Even so, *Smentek* implied that the proper way to read *Smith* is as an opinion that if mandatory as to anything, is mandatory as to forum. *See Smentek*, *supra*, at 376.[7]

Signal will return to *Smentek* soon.

### d. *Smith Does Not Contain Ordinary Dicta*

First, however, Signal does not quarrel with the proposition that the sentence setting forth *Smith's* expectation that the lower courts should apply the principles of comity to each other's class certification decisions with regard to common disputes is *dicta* of a kind.[8] In addition, Signal recognizes that generally, *dicta* is not binding.[9]

---

[7] "True, the effect of the doctrine of comity, when it is successfully invoked, is preclusive. But unlike res judicata, it is a doctrine that does not require but merely permits preclusion, *except* (as we're about to see) *when it governs choice of forum*. *The mandatory comity* for which the defendants in our case contend is just another name for collateral estoppel."); *Id.* (emphasis added). *See also id.*, at 377 ("But what is the solution to the judge-shopping problem? How are courts or legislatures to prevent class action litigation from metastasizing? The rule urged by the defendants in this case that the denial of class certification bars the certification of the same or a similar class in a suit by a member of the same class as the previous suit might do the trick, but it would contradict the holding of *Smith v. Bayer Corp.*, . . . Cases such as *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 103-05, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S. Ct. 1070, 87 L. Ed. 1407 (1943); *Younger v. Harris, supra*, 401 U.S. at 43-44, and *Hoover v. Wagner*, 47 F.3d 845, 851 (7th Cir. 1995), *which in the name of comity bar a plaintiff from one forum because another is deemed more appropriate*, are not in point; . . .") (emphasis added).

[8] *See Smith*, *supra*, at 2382 ("Finally, we would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute. *See*, *e.g., Cortez Byrd Chips, Inc.* v. *Bill Harbert Constr. Co.*, 529 U.S. 193, 198, 120 S. Ct. 1331, 146 L. Ed. 2d 171 (2000) (citing *Landis* v. *North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)).").

[9] *See Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006). *See also In re: Volkswagen of America,* 506 F.3d 376, 382 (5th Cir. 2007), *affirmed en banc*, *Volkswagen*, *infra* (*dicta* is generally not binding).

This, however, is not ordinary *dicta*. It is unreasonable to suppose that it is, i.e., that the *Smith* Court expected its warning to be treated indifferently. On its face, *Smith* belies such an interpretation of the opinion. This part of *Smith* should therefore be treated more deferentially than ordinary *dicta*.[10]

### e. *The Court Below Decided that Smith is Foolish*

The thrust of the Decision below is that *Smith* is ill-advised, that *Smith* directs lower courts to waste their time on futile activity relative to comity. If, however, the Court's expectation regarding comity is more than ordinary *dicta*, the conclusion that the Decision below is tantamount to legal blasphemy is a straightforward one.

### f. *Smith Clearly Implicates the First-Filed Rule*

The first filed rule is unquestionably implicated by *Smith*. *Smith* basically commands lower courts to utilize the first-filed rule to resolve disputes that arise in

---

[10] *Central Va.* is instructive. *Central Va.* quoted a seminal opinion on the meaning of *dicta*, an opinion by Chief Justice Marshall. In *Cohens v. Virginia*, Chief Justice Marshall explained: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." *Cohens v. Virginia*, 6 Wheat. 264, 19 U.S. 264, 399-400, 5 L. Ed. 257 (1821). *Smith's* expectation was not, however, the likely product of an internal process that was curt, trivial or rushed. The fact that *Smith* is unanimous is powerful evidence of the greater likelihood that the process was not cavalier. *See Smith*, *supra*, at 2382. It seems more likely that the Court discussed the remedial portion of the opinion internally at some length to arrive at a unanimous decision. *Smith's* expectation should therefore be heeded. It should not be treated as ordinary *dicta*. *Id*. The context reveals that the Court expected more deference than that from the courts below. *See Cohens*, *supra*.

common with existing class certification decisions. In accordance with Fifth Circuit law, *David* resolved a great many legal issues and some factual ones on the road to rejecting the motion for class certification. *See*, *e.g.*, *David*, *supra*, 2012 U.S. Dist. LEXIS 114247, at \*110 (". . . a plaintiff's complicity in doing whatever was necessary to enter this country" is a basis for a jury in this litigation to exonerate Signal).

In practice, *Smith* commands second courts to transfer common disputes to the original class action court. *Smith's* reliance on the first-filed rule is indisputable. Proving this proposition true are: (1) *Smith's* explicit reference to *Cortez Byrd Chips* and *Landis* immediately after *Smith* announced its expectation with regard to comity; (2) the page of *Cortez* that *Smith* specifically alludes to; and (3) *Cortez's* reliance on *Kerotest*, a recognized source of the first-filed rule. *See*, *e.g.*, *Cadle*, *supra*, at 603 (citing *Kerotest* as authority for first-filed principle).

On the page, for instance, of *Cortez* cited in *Smith*, i.e., page 198, *Cortez* said:

> If §§ 10 and 11 [of the Arbitration Act] are permissive and thus supplement, but do not supplant, the general provision, Cortez Byrd's motion to confirm or modify was properly filed in Mississippi, *and under principles of deference to the court of first filing*, *the Alabama court should have considered staying its hand*. *Cf. Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185, 96 L. Ed. 200, 72 S. Ct. 219 (1952); *Landis* v. *North American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct.

163 (1936); 5A C. Wright & A. Miller, Federal Practice
and Procedure § 1360 (1990). (emphasis added).

It is therefore incontrovertible that when **Smith** referred to the concept of

comity, *see Smith*, *supra*, at 2381, the Court was thinking of the brand of comity

exemplified by the first-filed rule. *See*, *e.g.*, *Cadle*, *supra*, at 603, citing **Kerotest**.

Previously, Signal discussed the reasons why it would not be appropriate to

refer to the remedial portion of **Smith** as normal *dicta*. The lower Court implied that

**Smith's** remedial section was wasteful or superfluous on account of the fact that the

first-filed rule is not applicable to the context addressed in **Smith**, namely, a

defendant who triumphed in a contest over class certification who then seeks to curb

relitigation of disputes held in common with the class certification decision. *Cf.*

*Smith*, *supra*, at 2381-82.

**Smith** indicates both that the first-filed rule is a remedy for the triumphant

class action defendant and that the remedy is expressed by transferring the

relitigation to the class action court, where the doctrine of *stare decisis* would be

most potent. *Id*. *See also* 18 Moore's Federal Practice, § 134.02[1][a] (Lexis 2013)

("A court should give considerable weight *to its own previous decisions* unless and

until they have been overruled or undermined by the decision of a higher court or a

statutory overruling.") (emphasis added).

19

In summary, the Decision below and *Smith* are hopelessly at odds and contradictory. If *Smith* is mandatory as to comity and forum, the Decision below is unsustainable.

### g.   *Smentek Validates This Petition*

Signal recognizes that *Smentek* does not expressly state that Signal is interpreting *Smith* correctly. *Smentek* does, however, indicate agreement with Signal's view of what *Smith* signifies. *See Smentek*, *supra*, at 376.

As stated before, *Smentek's* seeming conclusion is that if *Smith's* comity in *Smith* encompasses anything mandatory, it is something forum-based. *Id*. *Smentek* was a product of a Rule 23(f) review rather than a mandamus process. *See Smentek*, *supra*, at 375. As stated before, Judge Posner found *Smith* "cryptic" with regard to "comity." *Id*. *Smentek* considered whether "comity between federal district judges' rulings on class certification is preclusive." *See Smentek*, *supra*, at 377. The Court said, "[w]e have decided: it is not." *Id*.

*Smentek* accordingly emphasized that comity is not a substitute for the estoppel effect *Smith* forbade. *Smentek* nevertheless also wondered whether *Smith* addressed a more mandatory brand of comity. *See Smentek*, *supra*, at 376. And as indicated above, Judge Posner seemingly wrote that if *Smith's* comity was mandatory anywhere, it was probably mandatory regarding forum. *Id*.

In *Smith's* terms, this view of *Smith* – that *Smith's* expectation is intertwined with the first-filed rule in a mandatory sense – has the added attraction of rationalizing *Smith*. *Cf. Smith*, *supra*, at 2381 (". . . our legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of *similar* litigation brought by *different* plaintiffs.").[11] When *Smith* is read in its entirety, *in pari*, as Signal reads it,[12] the resulting interpretation of *Smith* is so forceful and so internally consistent that it becomes hard to disagree with the view that *Smith* is indeed mandatory with regard to the first-filed effect. *Cf. Volkswagen*, *supra*.

The interpretation that optimizes *Smith's* reference to *stare decisis* is precisely the one advanced by Signal because *stare decisis* is most potent before the original judge, as stated earlier. Smith therefore encourages first-filed transfer to the original court. *See* 18 Moore's Federal Practice, *supra*, at § 134.02[1][a] (court should give considerable weight to its own previous decisions).

---

[11] This language also proves that it is a significant mistake to restrict *Smith's* remedial effect to second actions praying for the certification of a class action. Had that been the intention of the Court, the Court would have said something more like "identical" instead of "*similar* litigation brought by *different* plaintiffs." *Smith, supra*, at 2381 (emphasis added).

[12] *See Setton Towing, LLC v. St. Paul Surplus Lines Ins. Co.*, 703 F.3d 268, 281 n. 1 (5th Cir. 2013) ("The Louisiana Supreme Court vacated that opinion on appeal, however, in an opinion that reads in its entirety . . . ").

21

Therefore, it makes significant sense to interpret *Smentek* the way Signal does, as authority legitimizing Signal's impression of the right way to interpret *Smith*.

It is not germane to the analysis that each individual testifies to a personal recruitment story, a personal travel story and a personal perspective on why he was abused. The lower Court thought such differences important. See Appx., Doc. #2, at p. 3. This was emblematic of the lower Court's flawed legal reasoning, legal reasoning erroneously conflating Rule 23(b)(3) and the first-filed rule. They are not coextensive. *See Save Power Ltd.*, *supra*, at 950 (parties and issues need not be identical for first-filed rule to apply).

### h.  *The Lower Court Clearly Violated International Fidelity*

The view that Rule 23(b)(3) and the first-filed rule are coextensive, the lower court's view, cannot be reconciled with *Int'l Fidelity's* incomplete overlap test, a test the Court below did not apply. *See Int'l Fidelity Ins. Co.*, *supra*, at 678.  This profound error of law taints the decision below unalterably with a "contrary to law" quality.

It is apparent from *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011) that the first-filed rule and Rule 23(b)(3) are not coextensive. "'What matters to class certification," as opposed to the first-filed rule, "is not the raising of common 'questions' -- *even in droves* -- but, rather the capacity

22

of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" ***See Wal-Mart Stores***, ***supra***, at 2550 (italics in original, emphasis added and citation omitted).

In contrast, from ***Int'l Fidelity's*** focus on the core issues and ***West Gulf's*** focus on "common subject matter," it is evident that a District Court confronting a first-filed petition must be suitably interested in whether there are, in "droves," "common 'questions' . . ." ***See Wal-Mart Stores***, ***supra***, at 2550 (emphasis added and citation omitted).

It is incontrovertible that the lower court ***essentially*** found that the first action and this action overlapped incompletely. According to ***Int'l Fidelity***, in such a case, factors that would have helped the lower Court determine whether a substantial overlap existed included whether the core issues were the same and whether there were indications that much of the proof adduced in the two actions would be the same. ***See Int'l Fidelity***, ***supra***, at 678.

The Decision below plainly did not heed ***Int'l Fidelity's*** instructions with regard to the methodology for assessing the degree of overlap in a case in which the extent of overlap is known to be incomplete. The opinion below did not examine whether the two actions shared the same core issues, which they obviously did. The Decision below did not reflect on how much that fact illuminated the evident truth that the two actions would therefore employ much of the same proof.

23

The first court addressed that issue repeatedly, and on the basis of a far more developed record than the lower Court's. *See, e.g., David, supra*, at \*79 ("common issues are present in the[] forced labor claims.").

The lower Court ignored those insights and dwelled instead of a flawed understanding of first-filed law, one that deceived it into mistaking Rule 23(b)(3) for the first-filed rule. The Decision below is therefore contrary to law.

This quality of the decision below is especially apparent from its failure to consider the three, core policies the Fifth Circuit takes special heed to apply. *See Int'l Fidelity, supra*, at 678.[13] *See also Homoki v. Conversion Services, Inc.*, 488 Fed. Appx. 848, 850 (5th Cir. 2012) ("special heed" taken to enforce rule's core policies). *But see The Cadle Co.*, 174 F.3d at 604 (first-filed rule is used to "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that *might* substantially duplicate those raised by a case *pending* in another court.") (italics in original and emphasis added); *West Gulf, infra*, at 730 ("This circuit has recognized and applied these comity principles that underlie the first-filed rule. In *Mann*, we held that the court with 'prior jurisdiction over *the common subject matter*' should

---

[13] "'Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.'" In considering these factors, we "'exercise care to avoid interference with each other's affairs'" as "'[t]he concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Id.* (Footnotes omitted).

resolve all issues presented in related actions.") (emphasis added and internal citations omitted).

The lower court considered these policies only in a minimal way. The lower court concluded that the differences between the plaintiffs obviated the need for any concern for non-uniform results. The lower court apparently believed that one would expect different results from different plaintiffs, and that non-uniform results would therefore be predictable and normal. Even if this is true, which is doubtful in a case involving, as this one does, charges, in a civil context, of criminal misconduct,[14] the lower Court plainly violated *Int'l Fidelity* by not considering duplication or the first court's integrity and authority relative to common disputes arising from *David*. This petition should therefore be granted.

### i. *The Lower Court Clearly Violated Save Power*

When parties argue that the first-filed rule does not apply because "neither the issues nor the parties are identical to those in the Original Action," this Court answers that "[t]he rule does not . . . require that cases be identical. The crucial inquiry is one of 'substantial overlap': . . ." *Save Power Ltd., supra*, at 950.

---

[14] *Cf. H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 255, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (Scalia, J., concurring in the judgment) ("[The TVPA], since it has criminal applications as well, must, even in its civil applications, possess the degree of certainty required for criminal laws, . . .").

When the Court below said, "'the fact that the parties are different cuts against an argument for substantial overlap,'" citing a distinguishable, District Court case never vetted by this Court, *see* Appx., Doc. #2, at p. 5, the effect was to both violate and erode *Save Power*. This petition should therefore be granted.

The reason the Decision below violates *Save Power* is because it is impossible to measure the distance from *Save Power's* rule to the Decision below's, "party differences cut against substantial overlap" rule.

Since no one can measure that distance, the exception swallows the rule, resulting in the rule's violation. The distinction becomes meaningless because no one can divine a disciplined basis for validly enforcing both rules. *Save Power* implies that the fact that the parties are different does not cut against" substantial overlap. In addition, *Int'l Fidelity* provides the accepted basis for evaluating overlap when the overlap between two actions is incomplete. While one of the incomplete overlap factors the "extent of overlap," *Int'l Fidelity*, *supra*, at 678, it is apparent from the Decision below that the lower court attributed excessive importance to plaintiff differences contrary to *Save Power* and the entirety of *Int'l Fidelity's* incomplete overlap test. This petition should therefore be upheld to prevent the erosion of *Save Power*, vindicate the first-filed rule's policies and administer justice in this litigation more wisely. *Cf. Kerotest*, *supra*.

### *j.*    *West Gulf Was Clearly Misinterpreted*

A profound, legal error in the Decision below is misinterpretation of *West Gulf*. It is, of course, true, that *West Gulf* says at one point: "To avoid these ills, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court. In particular, '[a] court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.'" *See West Gulf*, *supra*, at 729 (footnote and internal citations omitted).

However, when read in its entirety, as it must be, *West Gulf* is actually one of many, Fifth Circuit cases demonstrating that the plaintiffs and the Court below misconceive the first-filed rule.

The Court below failed to distinguish what is sufficient, in the first-filed arena, from what is necessary. If the degree of identity between two actions is so complete that the first action will simultaneously resolve a second action, a sufficient basis obviously exists for transfer under the rule, as *West Gulf* acknowledges. Such a degree of identity, however, is not necessary, and *West Gulf* certainly did not hold that it was. To the contrary, facially, *West Gulf* alluded to the issue of whether two actions are "*closely* related," *West Gulf*, *supra*, at 723 (emphasis added), or share "'*common* subject matter . . .'" *See id.*, at 730 (emphasis added).

Here, the existence of common subject matter is irrefutable. Furthermore, however, *Int'l Fidelity*, *supra*, settles this dispute in Signal's favor conclusively because it is impossible to reconcile a test for applying the first-filed rule to actions that overlap incompletely with the Decision below's conception of the first-filed rule's contours. Therefore, the Decision below must be reversed.

The first filed rule is not dependent on the first action reducing the second action to judgment. To the contrary, since the inquiry is non-mechanical, i.e., equitable, *see Kerotest Mfg. Co.*, *supra*, 342 U.S. at 183-84,[15] the Fifth Circuit "take[s] special heed," with regard to the first-filed rule, equitably, "to 'avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Homoki*, *supra*, at 850 (citation omitted). The Court below undoubtedly failed to measure those considerations in this litigation. The Decision below is thus undeniably a product of legal error with regard to the contours of the first filed rule.

## 5.   CONCLUSION

For all of the reasons stated above, this petition establishes that the Decision below is clearly contrary to law. *Cf. Radmax*, *supra*, 720 F.3d at 287. It is also self-

---

[15] "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Id*.

28

evident that Signal has "'no other adequate means to attain the relief [it] desires . .

.'" *See id.* (footnote omitted and brackets in original). In addition, Signal has shown

that relief in this instance will "have an importance beyond the immediate case." *See*

*Volkswagen*, *supra*, at 319 (citations omitted). This petition should therefore be

upheld. *Cf. Radmax*, *supra*, 720 F.3d at 287 n. 1 ("Mandamus petitions from the

Marshall Division [of the Eastern District of Texas] are no strangers to the federal

courts of appeals.").

Respectfully submitted,

HANGARTNER RYDBERG & TERRELL, LLC

By:                        

Alan Dean Weinberger, La. Bar #13331
Hal D. Ungar, La. Bar # 31344
One Shell Square, 701 Poydras Street, Suite 310
New Orleans, LA  70139
Telephone (504) 522-5690
Facsimile: (504) 522-5689

Counsel for Signal International, LLC,
Signal International, Inc.,
Signal International Texas, G.P., and
Signal International Texas, L.P.

29

## CERTIFICATE OF SERVICE

I certify that on March 21, 2014, the undersigned counsel served a copy of this Petition for Writ of Mandamus on the Respondent and all counsel of record, by Federal Express overnight courier, addressed as follows:

Hon. Marcia A. Crone
United States District Court
Eastern District of Texas
300 Willow Street, Suite 239
Beaumont, Texas  77701
*Respondent*

William H. Boice
Brian G. Corgan
Heather L. Heindel
Susan W. Pangborn
Kilpatrick Townsend & Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4530
*Attorneys for Plaintiffs-Real
Party In Interest*

Timothy W Cerniglia
Timothy W. Cerniglia, PLC
1521 St Charles Ave
New Orleans, LA 70130
*Attorneys for Defendants,
Malvern C. Burnett, Gulf Coast
Immigration Law Center, LLC and
Law Offices of Malvern C. Burnett*

Stephen H. Shapiro
Stephen H. Shapiro, Attorney at Law
700 Camp Street
New Orleans, LA  70130
*Attorneys for Defendants,
Sachin Dewan and
Dewan Consultants Pvt. Ltd
a/k/a Medtech Consultants*

Alan Dean Weinberger

In addition, on March 21, 2014, the undersigned counsel forwarded the foregoing Petition for Writ of Mandamus in paper form to the Clerk of the Fifth Circuit by hand delivery.

Alan Dean Weinberger

30